AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of West Virginia

| | |
|---|---|
| United States of America<br>v.<br><br>Jamie Otis Southern<br><br>*Defendant(s)* | )<br>)<br>) Case No. 5:20-mj-00027<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **June 17-19, 2020** in the county of **Raleigh** in the **Southern** District of **West Virginia**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 1591(a) and 1594(a) | Attempted Sex Trafficking of a Minor Under the Age of 14 |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Steven A. Sommers, Detective-Sergeant
*Printed name and title*

Signed and sworn to by telephonic means.
~~Sworn to before me and signed in my presence~~.

Date: 07/17/2020

*Judge's signature*

City and state: Bluefield, West Virginia

Omar J. Aboulhosn, United States Magistrate Judge
*Printed name and title*

**AFFIDAVIT**

I, Detective-Sergeant Steven A. Sommers, being duly sworn, depose and state as follows:

**INTRODUCTION**

1. I have been a member of the Mercer County Sheriff's Department for almost 16 years and have additionally served one year with another law enforcement agency as a law enforcement official. Collectively, I have 17 years of experience as a law enforcement official and criminal investigator. I am currently the Commander of the Criminal Investigation Bureau and an investigator with the West Virginia Internet Crimes Against Children Task Force, the Mercer County Prosecuting Attorney's Office, Crimes Against Children Unit, and a Task Force Officer with the Federal Bureau of Investigation, Pittsburgh Division, West Virginia Child Exploitation/Human Trafficking Task Force.

2. I have participated in hundreds of criminal investigations into matters which cover a vast array of criminal activity. I have been involved in over one hundred criminal investigations which specifically concerned the sexual exploitation of children by use of the Internet and/or digital based technology and crimes involving the physical abuse of children. I have received extensive training and gained experience

in interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, computer crimes involving computer intrusions and other computer-based crimes, computer evidence identification, computer evidence seizure and processing and various other criminal laws and procedures.

3. I make this affidavit in support of an application for a criminal complaint against JAMIE OTIS SOUTHERN, age 50, charging him with a violation of 18 U.S.C. §§ 1591(a) and 1594(a). That statute makes it illegal for any person to attempt to solicit, patronize, or obtain a minor to engage in commercial sexual activity, in and affecting interstate commerce.

4. The information contained in this affidavit is based on an investigation conducted by a law enforcement employee acting in an undercover capacity and information I obtained from other law enforcement officers involved in this investigation.

5. Since this affidavit is being submitted for the limited purpose of establishing probable cause, I have attempted to summarize the most relevant facts that establish the requisite probable cause. Therefore, I have not included each and every fact of this investigation. Additionally, where conversations or statements are related herein, they are set forth in substance and in pertinent part.

**BACKGROUND OF INVESTIGATION**

6. On or about Wednesday, June 17, 2020, a law enforcement employee was acting in an undercover capacity ("UCO"). In that role, the UCO had posted an advertisement on Craigslist indicating she was a "mama bear" in Beckley, Raleigh County, West Virginia, with her "cubs." A person later identified as JAMIE OTIS SOUTHERN responded to the Craigslist ad via email. In his emails, SOUTHERN indicated he was "always up for family fun," shortly thereafter clarifying that he meant "fun with the cubs."

7. SOUTHERN then directed the conversation to the cost to engage in such activity, asking "How much to play and where are you located?" He also inquired, "What ages? I hope we can work something out today. I really want to play."

8. SOUTHERN indicated that he was located in Tazewell, Virginia. He asked if the UCO would be willing to drive part of the way to meet him. SOUTHERN offered to pay for gas and a hotel room if the UCO was willing to travel to a location closer to Virginia.

9. During the emails SOUTHERN supplied a phone number. The UCO responded to SOUTHERN via text message.

10. During the course of the ensuing text messages, the UCO indicated that she was a mother with two daughters, aged 11 and 14. The UCO offered to drive from Beckley to Princeton, Mercer

County, West Virginia, to meet SOUTHERN closer to Virginia. SOUTHERN asked further about what "donations" would be required. The UCO responded that the 11-year-old was a virgin, but for the right donation she could be made available for sexual intercourse. The UCO further indicated that the 14-year-old was more sexually experienced.

    11.   The UCO told SOUTHERN that she would need to know his particular interests before discussing donations. SOUTHERN responded, "I would love both if you don't want to [sic] much of a donation." He also said, "I got a question are they willing or are they going to be screaming and crying because I have a soft heart I could never hurt a kid." The UCO indicated that it would be $450 for both minors.

    12.   SOUTHERN attempted to negotiate down to 400 and asked what rules the UCO had. The UCO indicated that there could be "no rough play or anal" and that condoms must be used. The UCO also stated she could either watch or stand just outside.

    13.   SOUTHERN asked "would I be allowed to eat there [sic] pussy." He also stated he would wear a condom because he "wouldn't want no more babies."

    14.   The UCO and SOUTHERN made a plan for the UCO to obtain a hotel room in Princeton, and SOUTHERN would pay for the hotel and only pay $400 to engage in sexual activity with the minors.

15. SOUTHERN further asked, "can [the minors] have a [sic] orgasm." He stated that he had a "magic tounge [sic]" and was "well experienced in getting a woman off."

16. SOUTHERN admitted he was "still kinda scared but I can't hardly pass up a chance like this I have never even seen a girl that young much less got my dick in them." He further told the UCO, "I have never been with anyone under 18 so when we get started more then likely I'm going to cum pretty quick it's not over soon as I get off is it I mean as young a beautiful as they are I will be lucky to get the head in before I bust a nut lol."

17. SOUTHERN specifically described how he was "perfect for the job" of taking the 11-year-old's virginity.

18. The UCO and SOUTHERN discussed meeting at the Day's Inn in Princeton. SOUTHERN directed the UCO to travel from Beckley to Princeton, rent a room, and let him know the cost.

19. It was arranged that the UCO and SOUTHERN would meet at the Applebee's in Princeton, Mercer County, West Virginia on June 19, 2020 before going to the hotel room where the purported minors were located. During the conversation, SOUTHERN indicated he liked to "party" and "ice skate," referring to using methamphetamine. He stated he would bring "a little" so he and the UCO could both "ice skate."

20. SOUTHERN failed to arrive at the meeting location as

arranged. He instead texted the UCO several hours later explaining that his truck had broken down and he had been unable to travel to the location. He stated that he would pay the UCO the money she was out for the hotel room and gas. SOUTHERN apologized several times, stating he had "missed out on the chance of a lifetime" and that he "would have walked if it wasn't 60 miles lol."

### **CONCLUSION**

21.  Based upon the information provided above, your affiant alleges that there exists probable cause to believe that JAMIE OTIS SOUTHERN knowingly violated 18 U.S.C. §§ 1591(a) and 1594(a), in that between on or about June 17, 2020, and June 19, 2020, he knowingly attempted to solicit, patronize, or obtain a minor to engage in commercial sexual activity, that is, to pay $400 to engage in sexual activity with what he believed were two minor females, aged 11 and 14. This activity was in and affecting interstate commerce due to the use of the Internet and cellular networks, the arrangement to use a hotel, and the interstate communication between Virginia and West Virginia. Defendant took several substantial steps that corroborated his intent, including negotiating a specific price, arranging a date and location for the meeting, directing the UCO to travel from Beckley, Raleigh County, West Virginia to Princeton, Mercer County, West Virginia,

and instructing the UC to rent a hotel room for which he agreed to pay her back.

_____
Steven A. Sommers
Detective-Sergeant
Mercer County Sheriff's Department

Signed and sworn to by telephonic means this 17th day of July, 2020.

Omar J. Aboulhosn
United States Magistrate Judge

7