## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

**UNITED STATES OF AMERICA**

**v.**                                    **Criminal No. 5:20-cr-00117**

**JAMIE OTIS SOUTHERN**

### DEFENDANT'S SENTENCING MEMORANDUM

**A.  Legal Objections:**

On November 23, 2020, Mr. Southern appeared before this Court and tendered his guilty plea to the offense of attempted sex trafficking of a minor under the age of fourteen in violation of 18 U.S.C. §§ 1591(a), (b)(1) and 1594(a). Mr. Southern's objections to the Probation Officer's calculations for his total base offense level, criminal history score, and certain special conditions for supervised release have been set forth in the Addendum and Supplemental Addendum to his PSR.[1]  Alternatively, Mr. Southern's request for consideration for a downward variance with respect to the additional assessment of two criminal history points under U.S.S.G. § 4A1.1(d) has been set forth in the Supplemental Addendum.

---

[1] The criminal history records attached to Mr. Southern's February 26, 2021, PSR objection letter in support of his argument that he should not receive two criminal history points under U.S.S.G. § 4A1.1(d) have been attached as Exhibit A.

**B. 18 U.S.C. § 3553(a) Factors for Consideration**

Mr. Southern would ask this Court to consider the following 18 U.S.C. § 3553(a) factors in order to impose a term of imprisonment of 180 months to be followed by a ten year term of supervised release.  This type of sentence would provide an appropriate level of punishment for Mr. Southern whose criminal history score is derived entirely from a thirteen year old conviction for grand larceny.  Mr. Southern will be serving an extended period of supervised release that will include restrictive conditions which monitor his access to the Internet, use of a personal computer at home, and his continued participation in a sex offender treatment program.  As such, the suggested sentence would strike an appropriate balance for imposing a sufficient, but not greater than necessary, punishment for his attempted sex trafficking offense.  Mr. Southern would rely upon the following factors in support of this suggested sentence:

(1)     Mr. Southern's extensive history of substance abuse and addiction remains a causal factor for his engaging in discussions with about being interested in paying to have sex with minors.  (PSR ¶¶ 106-117).  As a teenager, Mr. Southern started consuming beer and regularly using marijuana, benzos, cocaine, amphetamines, and prescription opiates.  As an adult, Mr. Southern has used virtually every type of controlled substance and his daily consumption of alcoholic beverages once rose to the level of a half-gallon of liquor and a thirty-pack of beer.  His use of methamphetamine began in 2016 and consisted of an average of an "eight

ball" of methamphetamine per day.  Mr. Southern believed that he would have tested positive for methamphetamine and heroin on the date of his arrest in July of 2020.

It was during this time of daily methamphetamine use that Mr. Southern started downloading child pornography on one of his smart phones.  He also started responding to posts on Craigslist where law enforcement officers had presented themselves as being parents who were selling their daughters for sex.  Several scientific studies have determined that there is a link between increased incidents of compulsive and high-risk sexual behaviors among methamphetamine users.[2] Methamphetamine, in particular, has been reported to "increase [the user's] libido" and "decrease [the user's] sexual inhibitions."  Washton, *supra* at 54.  The disinhibiting effects of methamphetamine may lead some users to engage in acts which they are too inhibited to try when sober.  *Id.*  Other side effects of methamphetamine use "include prolong[ed] sexual performance, increase[ed] sexual enhancement, and heighten[ed] sexual desire.  Halkitis, *supra* at 208.  One survey of methamphetamine users revealed that a large majority – 65% – believed "their drug use had made them obsessed with sex and/or made their sex drive abnormally high."[3] The intoxicating effects of methamphetamine also work to impair verbal memory and

---

[2] *See* Arnold M. Washton et al., *Cocaine and Methamphetamine Addiction* 54 (W.W. Norton & Co. 2009).  Perry N. Halkitis et al., *Crystal Methamphetamine Use and HIV Transmission Among Gay and Bisexual Men,* Curr. Addict. Rep. 206, 208 (2014).  A copy of the latter article has been attached as Exhibit B.

[3] *See* Richard A. Rawson et al., *Drugs and Sexual Effects:  Role of Drug Type and Gender,* J. Subst. Abuse Treat. 103, 106 (2002).

executive functions "such as inhibition, problem solving, abstract thinking, and tasks that require mental flexibility."[4]

Mr. Southern's abuse of methamphetamine was likely a factor which gravitated him towards child pornography and talk about having sexual encounters with minors. As Mr. Southern has been able to maintain sobriety through his recent stay in custody, he understands and appreciates the wrongfulness of his conduct. Mr. Southern has had limited drug treatment services in the past and is willing to participate in any such program that may be available to him during his stay in federal custody or while on supervised release. (PSR ¶¶ 116-117). Substance abuse treatment programs that focus on drug use and risky sexual behaviors can "break the connection between drug use and sex" and can effectively address dependence and related sexually compulsive behaviors. *See* Washton, *supra* at 73.

(2)     This Court can consider Mr. Southern's limited criminal record which does not include any prior convictions for engaging in any violent conduct or ever harming any minor. (PSR ¶ 70). The initial sentence imposed for Mr. Southern's 2007 conviction was a suspended sentence where he spent six months on custody to be followed by an additional term of five years of probation.

The Court can consider that Mr. Southern has a pattern of not showing up to engage in sex with a purported minor after he had initially expressed an interest in paying for this type of criminal conduct. Within the days leading up to the charged

---

[4] *See* Paul M. Thompson et al., *Structural Abnormalities in the Brains of Human Subjects who use Methamphetamine*, J. Neurosci. 6028, 6031 (June 30, 2004).

offense, Mr. Southern had responded to two other Craigslist ads posted by undercover law enforcement officers.  (PSR ¶¶ 61-65).  One of the officers was posing as an adult who was asking $100 per hour for sex with either a 13-year-old girl or a 14-year-old girl.  On June 15, 2020, Mr. Southern expressed his interest in the proposal, but he never set a date or location where the rendezvous would take place.  On June 16, 2020, when the undercover asked again about Mr. Southern's intentions, Mr. Southern stated "I will know by 7 …. but I would say if I don't make it today I will miss out on that."  Mr. Southern essentially conveyed the same message to the purported mother of the 13-year-old daughter when he did not show up at the designated motel in Princeton.  While Mr. Southern took substantial steps toward the commission of a commercial sex act by engaging in these type of discussions, he never followed through with ever showing up at a place where a minor was purportedly waiting.

(3)     This Court can consider that the U.S.S.G. § 2G1.3(b)(3) enhancement for use of a computer to facilitate the travel of a minor is not an aggravating factor in these types of cases and does not serve to identify the more culpable defendants involved with sex trafficking offenses.  In Mr. Southern's case, law enforcement's reliance on Craigslist as a means of posting solicitations for sex with minors necessarily required Mr. Southern utilize a means of the Internet in order to respond.  According to a 2019 Pew Research Center Survey, 81% of adults own a smartphone

which they are more likely to use to access the Internet than any other device.[5]  Mr. Southern utilized his smartphone to access the initial post and then to send additional email and text messages to respond and discuss the proposition.  Given the use of email and text messaging is fairly commonplace in today's modern society, it should no longer serve as a means to enhance a defendant's guideline range in these types of cases.

Respectfully submitted this 17th day of March, 2021.

**JAMIE OTIS SOUTHERN**

By Counsel

**WESLEY P. PAGE**
**FEDERAL PUBLIC DEFENDER**

**s/David R. Bungard**
David R. Bungard, Bar Number: 5739
Assistant Federal Public Defender
Office of the Federal Public Defender
300 Virginia Street, East, Room 3400
Charleston, West Virginia  25301
Telephone: (304) 347-3350
Facsimile: (304) 347-3356
E-mail: david_bungard@fd.org

---

[5] *See*     https://www.pewresearch.org/internet/2019/06/13/mobile-technology-and-home-broadband-2019/