UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO. 5:20-cr-00117

JAMIE OTIS SOUTHERN

**MEMORANDUM OPINION AND ORDER**

On March 26, 2021, counsel and the parties appeared for disposition. Having received the parties' supplemental briefs as to Objection Two and Objection Ten to the Presentence Investigation Report, the matter is ready for adjudication.

**I.**

On June 17, 2020, Defendant Jamie Otis Southern responded to an advertisement on Craigslist entitled "Mama bear in town with cubs." The ad explained that the purported mother was looking for someone interested in a "fun play date." Mr. Southern was told that the purported children, her "cubs," were 11 and 14 years of age. He was quoted $450 for the sexual acts he wished to perform with the children. Upon request by Mr. Southern, the purported mother agreed to meet him closer to where he lived. Mr. Southern agreed to pay for the hotel room if the price for the sexual acts was reduced to $400. Plans were made to meet on June 19, 2020, at the Applebee's in Princeton. The purported mother and Mr. Southern would then visit the hotel room to meet the children. On June 19, 2020, however, Mr. Southern did not travel as planned; the agreed upon meet-up never occurred. On July 20, 2020, he was apprehended by law enforcement at the hotel where he was living.

On November 23, 2020, Mr. Southern pled guilty to a single-count indictment charging him with Attempted Sex Trafficking of a Minor Under the Age of 14, in violation of 18 U.S.C. §§ 1591(a), 1591(b)(1), and 1594(a). Section 1591(a)(1) provides:

(a) Whoever knowingly--

> (1) in or affecting interstate . . . commerce . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person

. . .

> [K]nowing, or . . . in reckless disregard of the fact . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be [guilty of an offense against the United States].

18 U.S.C. § 1591. Punishment for an attempt under the statute is the same as if the offense had been completed. 18 U.S.C. § 1594.

On January 15, 2021, the Probation Office prepared a presentence investigation report to which Mr. Southern timely filed objections. All objections were resolved during the sentencing hearing, with the exception of Objections Two and Tten.

## II.

**A.   *Objection Two***

Mr. Southern contends in Objection Two that he is entitled to a three-level reduction pursuant to U.S.S.G. § 2X1.1(b)(1), which provides as follows:

> If an attempt, decrease by 3 levels, unless the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control.

U.S.S.G. § 2X1.1(b)(1). Mr. Southern asserts that the reduction should apply inasmuch as he was

2

charged with an "attempt" offense, and neither of the provisos to U.S.S.G. § 2X1.1(b)(1) applies.

### 1. "Attempt" of the Offense

Mr. Southern first cites multiple cases applying Section 2X1.1(b)(1) to a variety of inchoate offenses, including "solicitation." In those cases, each defendant had stopped short of completing the substantive offense. He asserts that he too stopped short of completing the sex trafficking offense when (1) he did not travel to the meet-up, (2) no money exchanged hands, and (3) he did not secure the motel room.

The United States responds that "solicitation" in this instance is the substantive offense. Specifically, the United States emphasizes that one of the explicit means of completing the offense under § 1591(a) is solicitation. It thus deems inapplicable the cases relied upon by Mr. Southern. It further asserts that the statutory attempt provision found in § 1594(a) was only referenced in the indictment inasmuch as an undercover law enforcement agent posed as the mother communicating with Mr. Southern. The statutory reference thus should not be treated, according to the United States, as contemplating an incomplete substantive offense. The reference was instead added solely to take note of the factual impossibility produced by use of the undercover agent.

Mr. Southern replies that he was only charged with an attempted sex trafficking offense and should be considered for the Guidelines' attempt reduction.

The primary difficulty with the United States' contention is that the word "attempted" as used in the indictment precedes and modifies all of the statutory means that follow it, namely, to "entice, obtain, patronize, and solicit." [Doc. 16 at 1]. By comparison, the defendant in *United States v. Haas*, 986 F.3d 467 (4th Cir. 2021), similar to Mr. Southern, was ensnared by

an individual whom he believed was arranging for a sexual encounter with a minor; the individual was actually cooperating with law enforcement. The charging instrument in *Haas*, however, alleged both (1) the substantive offenses for "knowingly recruited, enticed, solicited and obtained," while also alleging immediately thereafter (2) that defendant "knowingly *attempted* to recruit, entice, solicit and obtain . . . ." Further, Mr. Southern's indictment labels the offense charged by the grand jury as "Attempted Sex Trafficking of a Minor."

Under the circumstances, it seems apparent that, despite the United States' underlying motivations, the grand jury charged Mr. Southern with an attempt. This result is reinforced by the general application principles espoused in the Guidelines at § 1B1.2(a):

> (a) Determine the offense guideline section in Chapter Two (Offense Conduct) applicable to the offense of conviction *(*i.e.*, the offense conduct charged in the count of the indictment or information of which the defendant was convicted)*.
>
> . . .
>
> *If the offense involved a conspiracy, attempt, or solicitation, refer to §2X1.1 (Attempt, Solicitation, or Conspiracy)* as well as the guideline referenced in the Statutory Index for the substantive offense. . . .

U.S.S.G. § 1B1.2(a) (emphasis added). The charging decision thus draws Mr. Southern within the confines of Section 2X1.1(b)(1), unless the two statutory provisos dictate otherwise.

### 2. U.S.S.G. § 2X1.1(b)(1) Proviso

As noted, the three-point reduction for an attempt applies under § 2X1.1(b)(1) unless one of the following circumstances appear:

> [(1)] the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or [(2)] the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control.

U.S.S.G. § 2X1.1(b)(1). Importantly, the Background found in the Commentary section, which

4

our Court of Appeals has relied upon previously, *United States v. Sykes*, 671 F. App'x 199, 200 (4th Cir. 2016), *United States v. Shakur*, 7 F. App'x. 289, 290 (4th Cir. 2001), clarifies as follows: "In *most* prosecutions for . . . attempts, the substantive offense *was substantially completed* . . . . In such cases, no reduction of the offense level is warranted." U.S.S.G. § 2X1.1 comment. (backg'd) (emphasis added).

In *Haas*, our Court of Appeals recited the elements necessary for an attempt conviction under § 1591 as follows:

> To sustain this attempted-sex-trafficking-of-a-child conviction, the government must have proven that (1) Haas knowingly attempted to recruit, entice, obtain, or solicit by any means a person, (2) Haas knew or recklessly disregarded that the person was under the age of eighteen and would be caused to engage in a commercial sex act, and (3) the defendant's conduct was in or affected interstate commerce.

*Haas*, 986 F.3d at 478. If one removes the language respecting the attempt, and further limits the substantive offense to the criminalized solicitation, the United States would have been required to prove the following elements for the substantive offense:

> To sustain this . . . sex-trafficking-of-a-child conviction, the government must have proven that (1) [the accused] knowingly . . . solicit[ed] by any means a person, (2) he knew or recklessly disregarded that the person was under the age of eighteen and would be caused to engage in a commercial sex act, and (3) the defendant's conduct was in or affected interstate commerce.

With these elements in mind, the factual stipulation between Mr. Southern and the United States materially provides as follows:

> On June 17, 2020, I responded by email to an advertisement on Craigslist entitled "Mama bear in town with the cubs" in the area of Beckley, West Virginia, looking for someone interested in "a fun play date." I told the purported mom . . . that I was interested in "fun with the cubs" and asked, "How much to play and where are you located?" I also asked for and received a photograph of the purported mother with her daughters, ages 11 and 14. Our conversation soon switched over to take place via text messages. During those conversations, I asked again about the price for sexual activity with the minors. I was told that the 11-year old was a virgin, but could be available for sexual intercourse for the right price, and that the 14-year-

old was more experienced. I was quoted a price of $450 for both girls. We also discussed rules, and I agreed that I had no interest in anal sex but did ask whether I would be allowed to perform oral sex on the girls. I also agreed to use a condom because I did not want any more children. I requested that the woman bring the children closer to where I had stated I lived in Tazewell, Virginia, and we agreed to meet in Princeton, West Virginia. I agreed to pay for the hotel room if the price for sex with the girls could be reduced to $400. I discussed in detail the sexual activity I intended to engage in with the minor, include sexual intercourse and oral sex. In order to confirm that I was not a police officer, I also texted a picture of my penis to the woman. We made plans to meet on June 19, 2020. I told her to rent a hotel room, and we discussed that she would rent a room at the Day's Inn in Princeton and I would pay her back. We discussed meeting initially at the Applebee's in Princeton and then going to meet the girls at the hotel room. Shortly before I began communicating with the mother I had arranged to meet, I had also communicated with two other individuals from Craigslist. One person was a man who indicated he had access to a 13-year-old girl. I discussed meeting him on June 16 or 17, 2020, at the Econolodge in Summersville, West Virginia, to engage in sexual intercourse with the 13-year-old for $100. The other person identified herself as a 14-year-old girl; I offered to help her earn money because I wanted to "see that sexy body and that sweet little pussy." When she said she felt uncomfortable sending nude photographs, I offered to pay her $30 for five pictures that showed "all you can without getting in trouble lol."

[Doc. 54, Ex. A, at 1-2 (footnotes omitted)].

Two noteworthy legal commentators observe several dictionaries are reliable aids in ascertaining the meaning of legal terms. *See* Antonin Scalia & Bryan Garner, *A Note on the Use of Dictionaries*, 16 Green Bag 2d 419 (2013). The authors offer three recommended sources for legal definitions for the time period approximating when § 1591 was enacted. The respective entries in the three sources for the word "solicit," or the most relevant form thereof, reflect as follows:

| *Black's Law Dictionary* | *Merriam-Webster's Dictionary of Law* | *Garner's Dictionary of Legal Usage* |
|---|---|---|
| "3. An offer to pay or accept money in exchange for sex <the prostitute was charged with solicitation>" | "2: to ask, induce, advise, or command (a person) to do something and especially to commit a crime." | "solicitation. In criminal law, this broad term covers any word or actions by which one requests, urges, advises, counsels, tempts, commands, or otherwise entices or incites someone to commit a crime." |

The essence of these definitions is a culpable enticement or directive to commit a crime. The stipulation reflects that (1) Mr. Southern was searching online advertisements for

6

minors with whom he could engage in sexual activities, (2) upon finding a match, he inquired about pricing and location, (3) he then sought pictures and information about his minor victims from their putative offeror, (4) he changed to a more convenient and speedy mode of communication to facilitate the contemplated transaction, (5) he again asked for pricing information and negotiated rates and rules for both victims, down to the types of sex permitted and the use of birth control, (6) he specified the location of the meet-up closer to his place of residence and renegotiated the price, (7) importantly, he struck the deal, (8) he directed the offeror to reserve a hotel room at a specific property, for which he would pay the applicable rate, (9) he performed the exceptionally risky step of sending a picture of his genitals to the offeror to reassure her he was not a member of law enforcement, and (10) he set the meet-up date as June 19, 2020.

Aligning these undisputed facts with the statutory elements for the substantive offense, three things become apparent. First, the communication took place both via Internet and cellular networks. The offensive conduct was thus in or affecting interstate commerce. Second, Mr. Southern "solicited," at a minimum, when he offered to pay $450 to have sex with the two minors. This was an enticement for the fictitious mother, and thus those in her charge, to engage in unlawful sexual activity. Third, Mr. Southern knew, recklessly disregarded -- and frankly appears to be delighted about -- the fact that the victims were under the age of eighteen. He told the fictitious mother that he was "perfect for the job" of taking the 11-year-old's virginity. This too demonstrates he knew the two victims would have been caused to engage in a commercial sex act.

It is difficult to imagine a more clear-cut case of the substantive solicitation criminalized by § 1521, from both common-sense and legal standpoints. *See, e.g.*, *United States v. Chapdelaine*, 989 F.2d 28, 35-36 (1st Cir. 1993) (noting "near accomplishment of the criminal

object normally poses enough risk of actual harm, and reveals enough culpability . . . [to defeat] the reduction available for conspiracies and attempts that have not progressed very far."); *accord United States v. Medina*, 74 F.3d 413, 418 (2d Cir. 1996). Accordingly, the Court concludes that Mr. Southern completed all the acts he believed necessary for successful completion of the substantive solicitation offense.

The attempt for which Mr. Southern was convicted is quintessentially that which the Commentary describes where "the substantive offense was substantially completed . . . ." U.S.S.G. § 2X1.1 comment (backg'd). As such, "no reduction of the offense level is warranted." *Id*. Based upon the foregoing discussion, the Court **OVERRULES** Objection Two.

### B. *Objection Ten*

Objection Ten challenges two criminal history points added pursuant to U.S.S.G. § 4A1.1(d). Section 4A1.1(d) provides as follows:

> Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation . . . .

U.S.S.G. § 4A1.1(d). It is undisputed that Mr. Southern was serving a term of probation when the instant offense was committed. But the circumstances surrounding that term are a bit unusual.

As a result of criminal activity committed in 2006, Mr. Southern was convicted in 2008 of grand larceny in the Tazewell County Circuit Court in Virginia. He was sentenced to a ten-year term of imprisonment, with nine years and six months suspended. Mr. Southern spent six months incarcerated and was placed on a five-year term of probation. From 2013-2016, four probation revocation hearings were held, and the non-monetary portions of the sentences imposed are as follows:

| 12/09/2013 | One month of imprisonment and two years of supervised probation. |

| | |
|---|---|
| 08/20/2015 | Five months of imprisonment and two years of supervised probation. |
| 03/24/2016 | Two years of supervised probation. |
| 02/27/2018 | An *indefinite term* of probation until all costs, fines and restitution are paid, and he is released from the term by the Court.[1] |

The February 27, 2018, Order imposing the indefinite extension contained no language instructing the clerk to send a copy to Mr. Southern; no hearing held was held. At this writing, Mr. Southern remains on the indefinite probation term pending his payment of monetary penalties, approximately fifteen (15) years after committing his grand larceny offense. Further, a violation report is pending in Tazewell County based upon the instant offense, which doubtless will visit additional consequences upon him.

Mr. Southern asserts that the indefinite probation extension "entered by the Tazewell County Circuit Court violated [his] due process rights, his Sixth Amendment right to counsel, and his Eighth Amendment right against an excessive punishment for not satisfying an owed restitution obligation." [Doc. 65 at 11]. He notes controlling authority prescribing a right to counsel in cases where probation is being revoked. *Mempa v. Rhay*, 389 U.S. 128, 136 (1967); *Hewett v. North Carolina*, 415 F.2d 1315, 1322 (4th Cir. 1969). The indefinite extension, however, was not a revocation but rather a modification. Mr. Southern further notes that when a sentence is imposed in violation of a Sixth Amendment right to counsel, "the proper remedy [is] to vacate that

---

[1] In *Bearden v. Georgia*, 461 U.S. 660, 660 (1983), the Supreme Court observed as follows:

> A sentencing court cannot properly revoke a defendant's probation for failure to pay a fine and make restitution, absent evidence and findings that he was somehow responsible for the failure or that alternative forms of punishment were inadequate to meet the State's interest in punishment and deterrence, and hence here the trial court erred in automatically revoking petitioner's probation and turning the fine into a prison sentence without making such a determination.

*Id.* at 660. As noted, the Tazewell County Court here indefinitely extended probation without revoking the term.

9

portion of the sentence offensive to the Sixth Amendment without doing harm to the defendant's conviction." *United States v. Acuna-Reyna*, 677 F.3d 1282, 1294 (11th Cir. 2012); *United States v. Jackson*, 493 F.3d 1179, 1183 (10th Cir. 2007); *United States v. Ortega*, 94 F.3d 764, 769 (2d Cir. 1996); *United States v. Moskovits*, 86 F.3d 1303, 1309 (3d Cir. 1996). Mr. Southern thus contends that an appropriate remedy here is to ignore his probation extension and the additional two criminal history points otherwise required.

As our Court of Appeals has noted, "[A] conviction achieved in violation of the Sixth Amendment right to counsel cannot 'be used against a person either to support guilt or enhance punishment for another offense[.]'" *United States v. Collins*, 415 F.3d 304, 315 (4th Cir. 2005) (quoting *Burgett v. Texas*, 389 U.S. 109, 115 (1967)). In *Custis v. United States*, 511 U.S. 485 (1994), the Supreme Court observed similarly as follows:

> Custis invites us to extend the right to attack collaterally prior convictions used for sentence enhancement beyond the right to have appointed counsel established in *Gideon*. We decline to do so. We think that since the decision in *Johnson v. Zerbst* more than half a century ago, and running through our decisions in *Burgett* and *Tucker*, there has been a theme that failure to appoint counsel for an indigent defendant was a unique constitutional defect. Custis attacks his previous convictions claiming the denial of the effective assistance of counsel, that his guilty plea was not knowing and intelligent, and that he had not been adequately advised of his rights in opting for a "stipulated facts" trial. None of these alleged constitutional violations rises to the level of a jurisdictional defect resulting from the failure to appoint counsel at all.

*Id.* at 496. With the same type of finality considerations in mind as the majority in *Custis*, our Court of Appeals later observed as follows:

> To be sure, a sentencing court's ability to find facts is not unlimited. Its fact-finding with respect to prior convictions is constrained in two notable ways. First, federal sentencing proceedings are generally not the appropriate vehicle for mounting collateral attacks on the validity of prior convictions. As the *Custis* Court noted, allowing such attacks "would require sentencing courts to rummage through frequently nonexistent or difficult to obtain state-court transcripts or records that may date from another era, and may come from any one of the 50 States," and would "delay and impair the orderly administration of justice.

*United States v. Dean*, 604 F.3d 169, 174–75 (4th Cir. 2010).

Furthermore, as noted in *Collins*, "the burden fall[s] on the Defendant to at least raise an inference of the invalidity of the prior conviction" for counting purposes under the Guidelines. *Id.* at 316; *Parke v. Raley*, 506 U.S. 20, 31 (noting "even when a collateral attack on a final conviction rests on constitutional grounds, the presumption of regularity that attaches to final judgments makes it appropriate to assign a proof burden to the defendant."); *United States v. Reyes–Solano*, 543 F.3d 474, 478 (8th Cir. 2008) (holding that when defendant claims prior convictions resulting in criminal history points were obtained in violation of right to counsel, he must demonstrate by a preponderance of the evidence that prior convictions were constitutionally invalid).

Respecting the right to counsel in state court within the probation setting, the landscape is a bit stale and unsettled at best. In a nutshell, the Supreme Court has declined to set a bright-line rule respecting when counsel is required in the probation revocation -- much less modification -- setting. First, in *Mempa v. Rhay*, 389 U.S. 128 (1967), the Supreme Court noted that an individual serving a probation term is entitled to counsel when revocation and sentencing occur in the same proceeding. The decision appears to have hinged, however, on the fact that the sentencing portion of the bifurcated proceeding was deemed a critical stage.

Next, in *Morrissey v. Brewer*, 408 U.S. 471 (1972), the Supreme Court observed that a parole revocation comes post-conviction and deprives a convicted person only of his or her "conditional liberty" that depends in turn upon obedience to the conditions imposed by the sentencer. Nevertheless, the Supreme Court noted that one facing revocation is entitled to both (1) a probable cause hearing on the violation following arrest, and (2) another hearing prior to revocation.

Next, in *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973), the Supreme Court determined that a probationer likewise was entitled to both a preliminary and final revocation hearing. But the categorical grant of due process ended there. With respect to the appointment of counsel in that setting, the Supreme Court said this:

> We thus find no justification for a new inflexible constitutional rule with respect to the requirement of counsel. We think, rather, that the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system. Although the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent probationers or parolees.
>
> The facts and circumstances in preliminary and final hearings are susceptible of almost infinite variation, and a considerable discretion must be allowed the responsible agency in making the decision. Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself. In every case in which a request for counsel at a preliminary or final hearing is refused, the grounds for refusal should be stated succinctly in the record.

*Id.* at 790–91.

With the foregoing discussion in mind, Mr. Southern bears the burden of raising at least an inference that the Tazewell County Court probation modification order produced a *Gideon*-type structural error. This he cannot do. Foremost, he has cited no case suggesting as much. At best, he cites authorities supporting the *qualified* right to counsel in the probation *revocation* setting. The reason for this default is apparent. The Sixth Amendment applies only in "criminal

prosecutions," U.S. Const. amend. VI, and the Supreme Court has held that revocation proceedings are not criminal prosecutions for Sixth Amendment purposes. *Gagnon*, 411 U.S. at 782 (holding that probation revocation is not a stage of criminal prosecution); *Morrissey*, 408 U.S. at 480 (holding that a parole revocation proceeding "is not part of the criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply").

Mr. Southern may indeed ultimately devise a habeas strategy to seek vacatur of the modification order, especially since he was apparently denied under Virginia law of both notice and a hearing prior to the modification of his probation. *See*, *e.g.*, Va. Code § 19.2-304. But a federal sentencing proceeding is not the appropriate venue to collaterally challenge the action. In the event he does successfully challenge the modification order in Virginia, however, he may well be able to then obtain the relief he now seeks by resentencing. *See United States v. Gadsen*, 332 F.3d 224, 228 (4th Cir. 2003).

Inasmuch as Mr. Southern was serving a term of probation when he committed the instant offense, the two-point increase in his criminal history score is appropriate. The Court **OVERRULES** Objection Ten.

### III.

Considering the foregoing, the Court **OVERRULES** Objection Two and Objection Ten.

The Clerk is directed to send a copy of this Order to the Defendant, counsel, the United States Probation Office, and to the Office of the United States Marshal.

ENTERED: August 31, 2021



Frank W. Volk
United States District Judge